IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **VONNETTA GARDNER** ) <br> **f/k/a VONNETTA WRIGHT,** ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> **SUN LIFE INSURANCE** ) <br> **ASSURANCE COMPANY** ) <br> **OF CANADA,** ) <br>  ) <br> Defendant. ) | Civil Action File No.: |

## COMPLAINT

COMES NOW Plaintiff, Vonnetta Gardner f/k/a Vonnetta Wright, by and through her undersigned counsel, and alleges as follows in support of her claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq.:

### Jurisdiction & Parties

1. Plaintiff brings this action for long term disability benefits under 29 U.S.C. § 1132(a) (1) (B).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as a matter arising under the laws of the United States. This Court also has jurisdiction

under 29 U.S.C. § 1132(e) (1) as this is a matter arising under 29 U.S.C. § 1132(a) (1) (B).

3. Pursuant to 29 U.S.C. § 1132(e) (2) venue is proper in this district because Defendant may be found here and because Plaintiff resides in this district and received payment of the benefits at issue in this district.

4. At all times relevant to this action, Plaintiff was a resident of Georgia.

5. Defendant Sun Life Assurance Company of Canada ("Sun Life") or "Defendant(s) is a foreign corporation doing business in Georgia. Upon information and belief, Defendant Sun Life served as the claim administrator and claims fiduciary making benefit determinations under the Plan. Defendants may be served with process under Fed. R. Civ. P. Rule 4 through their registered agent Shakinah Edwards d/b CT Corporation System 1201 west Peachtree Street, N.E., Atlanta, GA 30361.

## Factual Background

6. Plaintiff is a former employee of ARMC Health Care ("ARMC"), and a participant in the ARMC Long Term Disability Plan (the "Plan"), which is an ERISA governed employee welfare benefit plan.

7.  ARMC is the sponsor of the Plan and the named Plan Administrator, all as defined by ERISA.

8.  Plan benefits are funded under Group Policy 85888 ("Group Policy" or "Policy"), which was issued by Defendant to ARMC on or about January 1, 2007; which, upon information and belief, such policy is still full force.

9.  Sun Life pays benefits under the plans/policies from its own assets or revenues.

10. Defendant administered the policies at issue, was a fiduciary and made all decisions under the policies with respect to the benefits that were payable.

11. Under the Plan, an "Executive" or "Department Head" participant qualifies for the Total Disability benefit if: " the Employee is not working or is earning less than 20% of his Indexed Monthly Earnings; and the Employee , because of Injury or Sickness, is unable to perform the Material  and Substantial Duties of his Own Occupation."

12. The Plan contains an alternative definition of disability for "All Other Employees" under which an Employee qualifies for the Total Disability benefit if: "the Employee is not working or is earning less than 20% of his Indexed Total Monthly Earnings; and during the Elimination Period and the next 24 months, the

Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.  After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to qualify for his benefit if he is unable to perform with reasonable continuity any Gainful Occupation for which he is, or becomes reasonably qualified by education, training or experience."

13. At the onset of her disability Plaintiff was employed as Division Manager/Director of a Skilled Nursing Facility.

14. Under the terms of the plan, Plaintiff's claim was subject to the definition of "Totally Disabled" for "Department Heads."

15. Plaintiff's duties included planning, coordinating and supervising the work of health care facility employees. Plaintiff's duties also included developing departmental procedures for the health care facility, working on quality of care issues and improving the efficiency of care at the medical facility.

16. Plaintiff's "Own Occupation" was very fast paced and demanding.

17. On or around May 2007 Plaintiff fell from a chair while assisting with a patient.  During the fall Plaintiff suffered multiple injuries including multiple herniated and bulging disks in her lumbar and sacral spine and injuries to her knees

and limbs. The symptoms of Plaintiff's conditions include constant and severe back pain, headaches, leg numbness, leg weakness, knee pain, hip pain, buttocks pain and radiculopathy.  To treat her symptoms, Plaintiff was prescribed many prescription drugs, the side effects of which inhibited Plaintiff's ability to work.

18. Plaintiff applied for and was granted short term disability and long term benefits by Defendant following a failed return to work attempt.

19. Plaintiff exhausted the short term disability benefit period under the policy.

20. Plaintiff exhausted the "Own Occupation" period under the "All Other Employee" definition of disability contained within the policy.

21. Plaintiff was found "Totally Disabled" under the terms of the Plan from September 2007 through September 2014.

22. From 2007 through 2014 Plaintiff underwent multiple medical procedures in attempts to treat her pain including multiple surgeries, numerous epidural steroids injections, trigger point injections, spinal column stimulator and failed physical therapy attempts.  None of these procedures provided Plaintiff with significant relief from her debilitating and chronic pain.

23. Defendant paid Plaintiff's long term disability claim through September 30, 2014.

24. On October 18, 2014 Defendant informed Plaintiff that her claim for long term disability benefits was being denied even though Plaintiff's medical condition had not improved.

25. Defendant denied Plaintiff's long term disability claim at approximately the time the Plaintiff was due to satisfy an overpayment of her long term disability benefit claim.

26. Defendant's October 2014 denial letter ignored the medical and vocational evidence that was submitted in support of Plaintiff's claim.

27. On or around April 2, 2015 Plaintiff appealed Defendant's decision denying her long term disability benefits and provided Defendant with copious medical information supporting her total disability.

28. Plaintiff appealed all of the denials of her claim.

29. Defendant had Plaintiff's claim reviewed by Dr. Richard S. Kaplan ("Dr. Kaplan"). Dr. Kaplan's review states in pertinent part:

> *Based on the medical records review, there is no objective basis to determine if the patient has any functionally impairing condition. Overall, the patient's treatment has been extraordinary in terms of duration of treatment and volume of medical assessment information which has been provided. ... potential barriers to functional recovery in this case are the chronicity of this case and the extremely high volume of medical assessment/treatment. Thus, there appears to be*

> *an extreme degree of medicalization and assumption of a role of anticipated life-long disability even though objective medical evidence does not support such a designation. . .*

30. Dr. Kaplan's medical opinion, is at least in part that, Plaintiff is not "Totally Disabled" because of the "duration" of her treatment and "volume of medical assessment information" provided to Sun Life.

31. Throughout the seven (7) year duration of her claim Plaintiff provided Sun Life with copious amounts of "objective" medical evidence documenting her disabling conditions including, *inter alia,* numerous MRIs of the cervical and lumbar spine, numerous X-Rays, lab test results, ultrasound results etc.

32. Dr. Kaplan's previous conduct during the paper claims review process has been criticized by a number of Court's throughout the nation. Specifically, federal courts have found Dr. Kaplan's paper reviews to be "cursory" and to contain "numerous deficiencies."

33. On June 24, 2015, Sun Life denied Plaintiff's claim by erroneously concluding that the medical documentation on file "does not support a functional impairment or any restrictions and limitations."

34. Sun Life denied Plaintiff's claim despite receiving copious medical records that documented the support of Plaintiff's total disability for more than seven (7) years.

35. The medical providers who supported Plaintiff's disability completed multiple physical examinations of the Plaintiff.

36. Defendant's physician reviewers, including Dr. Kaplan, never physically examined Plaintiff.

37. Sun Life arbitrarily and capriciously denied Plaintiff's claim in violation of the terms of the Plan and policy.

38. Plaintiff's claim for Social Security Disability benefits was approved with an effective date of 11/1/2007.

39. Defendant's Policy required that Plaintiff apply for Social Security Disability benefits.

40. Defendant reduced or offset Plaintiff's long term disability benefit by amounts Plaintiff received in Social Security Disability benefits.

41. Plaintiff has exhausted administrative remedies under the policy and plan.

## Count I – Claim for Benefits

42. Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 41 as if the same were set forth herein.

43. Plaintiff was determined by Defendants to be "Totally Disabled" from her "Own Occupation" and from "Any Gainful Occupation" from on or around September 2007 through September 2014, due to, *inter alia*, lumbago, post laminectomy syndrome, lumbar stenosis, disc degeneration, lumbar radiculopathy, cervical radiculopathy, chronic pain syndrome, migraine headache pain, insomnia, sleep apnea, and osteoarthritis. Plaintiff's conditions have worsened since September 2014.

44. Plaintiff's medical conditions render her "Totally Disabled" under the terms of the Plan in that such conditions preclude her from" working or earning less than 20% of her Indexed Total Monthly Earnings and performing the Material and Substantial Duties of her Own Occupation."

45. Moreover, Plaintiff's medical conditions render her "Totally Disabled" under the terms of the Plan in that her conditions preclude her from performing "with reasonable continuity Any Gainful Occupation for which she is, or becomes reasonably qualified by education, training or experience."

46. Defendant's decision to deny Plaintiff's appeal under the Plan was "wrong" as a matter of *de-novo* review, or alternately arbitrary and capricious in that the decision is not supported by the record, because Defendant:

9

a. "Cherry picked" the information considered ignoring the medical opinions of Plaintiff's treating and attending physicians that Plaintiff was unable to work;

b. Reinterpreted the same information and evidence previously accepted by Defendants to find Plaintiff disabled, to suddenly find Plaintiff able to work;

c. Failed to consider and properly evaluate the medicines taken by Plaintiff and the effects thereof;

d. Misinterpreting, Misquoting and Misconstruing Plaintiff's appeal letter;

e. Failed to take into account the credible statements provided by Plaintiff that reveal continued disability;

f. Relied on hearsay reports of physicians and other persons who did not examine Plaintiff;

g. Misquoted and misinterpreted medical evidence provided by Plaintiff's treating and attending physicians; and

    h. Failed to provide Plaintiff with a full and fair review of her claim as required by 29 U.S.C. § 1133 and the regulations codified at 29 C.F.R. § 2560.503-1.

47. Plaintiff is entitled to long term disability benefits under the Plan for the following reasons:

    a. These benefits are permitted under the Plan;

    b. Plaintiff has satisfied all conditions to the receipt of such benefits; and

    c. Plaintiff has not waived or otherwise relinquished her entitlement to these benefits.

Wherefore, Plaintiff asks this Honorable Court for an Order finding:

(a) Plaintiff has been continuously disabled under the Plan from September 30, 2014 through the present;

(b) Defendants' decision denying Plaintiff's appeal was wrong as a matter of *de-novo* review and/or arbitrary and capricious;

(c) Plaintiff is entitled to an award of long term disability benefits from September 30, 2014 through the date of judgment including interest;

(d) Plaintiff is entitled to be reinstated in the Plan;

(e) Plaintiff is entitled to her reasonable attorney fees incurred as a result of pursuing this action; and

(f) An injunction barring Defendant from prohibited acts as against Plaintiff;

(g) An award of any other relief this Court deems just or proper.

Submitted this 16th day of June, 2016.

/s/ *Paulette Adams Bradham*
Paulette Adams-Bradham
GA Bar No.:   004723
P.O. Box 5097
Alpharetta, GA  30023
(770) 650-4145
(770) 234-5206 (fax)
Paulette.adams@gmail.com
Attorney for Plaintiff